## CONSOLIDATED PLUMBING & HEATING COMPANY *v.* VERBISCUS.

1. APPEAL AND ERROR—COMMON PLEAS COURT—CIRCUIT COURT—SUPREME COURT—WEIGHT OF EVIDENCE

    Weighing the evidence, *de novo* as in chancery appeals, is not the function of the circuit court nor of the Supreme Court on appeal from the common pleas court of the city of Detroit.

2. SAME—CONTRACTS—PLUMBING—FINDING OF TRIAL COURT—CLEAR PREPONDERANCE OF EVIDENCE.

    Finding of the judge of the common pleas court that defendant owner had made a new agreement with plaintiff for plumbing work in house he was building after the general contractor defaulted in payment to plaintiff *held,* not against the clear preponderance of the evidence, hence, case is remanded to circuit court for entry of judgment affirming judgment for plaintiff entered by the court of common pleas.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 3 Am Jur, Appeal and Error § 896.

Appeal from Wayne; Weideman (Carl M.), J. Submitted April 6, 1961. (Docket No. 31, Calendar No. 48,934.) Decided September 22, 1961.

Assumpsit by Consolidated Plumbing & Heating Company, a copartnership, against Anton J. Verbiscus for sums owing on contract for plumbing installation. Judgment for plaintiff in Detroit common pleas court. On appeal to circuit court, judgment entered for defendant. Plaintiff appeals. Reversed and remanded for entry of order affirming common pleas court judgment for plaintiff.

*Goodman & Shifman,* for plaintiff.

*Lacy, Lawson, Kirkby, Bolton & Hoffman (John W. Hoffman,* of counsel), for defendant.

DETHMERS, C. J. This is appeal by plaintiff from the Wayne circuit court's reversal, on the grounds that it was against the clear preponderance of the evidence, of a judgment for plaintiff rendered in the court of common pleas of the city of Detroit. The question here, as in circuit court, is whether the common pleas court judgment was against the clear preponderance of the evidence.

Undisputed pertinent facts are that defendant owned a building site. On May 2, 1958, he procured a building permit from the city of Detroit for the construction thereon of an $18,000 dwelling. On June 9, 1958, he entered into a written contract with Shear Construction Company for the building of the house for $29,500. Shear awarded a subcontract for the necessary plumbing to plaintiff for $2,600, with Kohler plumbing fixtures specified. Plaintiff completed the rough plumbing and executed a waiver of lien therefor upon receipt of a check for $1,500 from Shear. The check was dishonored for insufficient funds and returned to plaintiff on October 3, 1958.

Plaintiff says that upon return of the check it ceased work on the job; that defendant then told plaintiff partners that he was taking over the building job and promised that he would be directly responsible to them for the cost of all the plumbing work if they would proceed with the job; that they agreed and defendant then gave them a check for $1,500, in place of the dishonored check, making it payable to plaintiff and Shear; that defendant had likewise made payments in that fashion to other subcontractors; that defendant then supplied plaintiff with a list of Crane fixture selections, to be installed instead of the originally agreed upon Kohler fixtures, increasing the cost by approximately $600, which he agreed to pay plaintiff in addition to the original contract amount; that in the specifications for fixtures from Crane, dated September 19, 1958, defendant had caused plaintiff's name to be placed therein as plumbing contractor and omitted any reference to Shear as contractor; that as plaintiff proceeded with the work defendant, from time to time, visited the construction site and signed invoices for materials to be used on the job, including one for plumbing fixtures dated as late as January 20, 1959; that plaintiff finished the job and rendered a bill for $3,235, being the originally agreed upon sum of $2,600 plus the approximate $600 for change from Kohler to Crane fixtures, deducting therefrom a $1,500 credit, the amount of the check defendant had already given plaintiff, for a balance, thus, of $1,735. Defendant refused to pay and denies having made the above agreement or any other with plaintiff. Having complied with the provisions of the mechanics' lien law,* defendant says he is not liable to plaintiff as a subcontractor of Shear.

---

* CL 1948 and CLS 1956, § 570.1 *et seq.* as amended (Stat Ann 1953 Rev and Stat Ann 1959 Cum Supp § 26.281 *et seq.*).—REPORTER.

The common pleas judge found that defendant had made the agreement with plaintiff as the latter claims. That finding the circuit judge held to have been contrary to the clear preponderance of the evidence.

The circuit judge wrote a lengthy and carefully analytical opinion, weighing the evidence adduced and relied upon by the opposing parties. We do not say that, had we been the trial judge, we might not have been persuaded to the circuit judge's view of the evidence rather than that of the common pleas judge. Weighing the evidence, *de novo* as in chancery appeals, is not our function, however, nor was it that of the circuit judge on appeal, as we have stated on previous occasions. *Ladney* v. *Ternes Steel Co.,* 359 Mich 228; *LaHood* v. *Wieladt,* 361 Mich 99.

Involved is a clash of testimony between plaintiff partners and defendant as to the formation of an agreement between them. Plaintiff suggests the trial court, in determining credibility, may well have considered proof of defendant's criminal record, his representation in the application for building permit that he would build an $18,000 house and his contract with Shear 1 month later for a price, instead, of $29,500, his failure to offer proofs that he had ever paid Shear or anyone else the full contract price for the house, his testimony that he had never dealt directly with city building inspectors and their records to the contrary. All this, say plaintiff partners, would hardly afford a basis for a judge's confidence in his truthfulness. Defendant does not dispute that plaintiffs have the amount of their claim coming to them.

The $1,500 check from defendant, made payable both to plaintiff and Shear, relied upon by plaintiff as supporting evidence for its position, may evidence merely, as the circuit judge indicates, caution on

defendant's part to make sure Shear paid plaintiff the amount due for the rough plumbing. At the same time it might well have been, as plaintiff claims and the trial judge found, payment from defendant to plaintiff to induce it to go on with the job under the claimed new agreement between them. Plaintiff makes a point of the Crane fixtures specification sheet, showing plaintiff as plumbing contractor and omitting mention of Shear. The circuit judge discounts this, however, pointing out that it was dated September 19, 1958, all of 2 weeks before October 3, 1958, when the Shear check was dishonored and following which plaintiff says it made the new agreement with defendant. The circuit judge views this fact as demonstrating that the specifications sheet in nowise evidenced a new agreement between defendant and plaintiff. To this plaintiff replies that the date situation discloses simply that, even before the bad-check episode, defendant was contemplating dropping Shear from the job, getting Crane instead of Kohler fixtures, and keeping plaintiff on the job as his plumbing contractor. Some of the other exhibits and pieces of evidence relied upon by the circuit judge as rebutting plaintiff's claim of an agreement with defendant are also susceptible, in certain respects, of constructions favorable to plaintiff. Accordingly, we do not agree that the trial court's judgment was against the clear preponderance of the evidence.

Reversed and remanded to the circuit court for entry of order affirming the judgment of the court of common pleas. Costs to plaintiff.

CARR, KELLY, TALBOT SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.